# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBERT D. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-108-RWS |
| | ) | |
| JASON LEWIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the Motion to Dismiss Plaintiff's Amended Complaint for Failure to Exhaust Administrative Remedies, filed by defendants Corizon, LLC ("Corizon") and Rebekah Graham, NP (collectively "defendants"). (ECF No. 22). Plaintiff has responded to the motion and defendants have replied, and the matter is now fully briefed and ready for disposition. For the following reasons, the motion will be granted, and plaintiff's claims against Corizon and Graham will be dismissed.

### Legal Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (*citing Twombly*, 550 U.S. at 555 & n.3). This obligation requires

plaintiffs to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss, a court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id*. at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, however. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *see also Gregory v. Dillard's, Inc*., 565 F.3d 464, 473 (8th Cir. 2009) (*en banc*) (to survive a motion to dismiss, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory.").

**Background**

Plaintiff is an inmate confined to the custody of the Missouri Department of Corrections ("MDOC"). He is currently incarcerated in the Southeast Correctional Center ("SECC"). He initiated this action on April 30, 2019 by filing a petition in the Circuit Court of Mississippi County, Missouri. He claimed that, following treatment for cancer, Corizon and Rebekah Graham, a nurse practitioner employed by Corizon, along with other Corizon employees and MDOC officials, were deliberately indifferent to his serious medical needs, in violation of his rights guaranteed by the United States Constitution and the Missouri Constitution. In support, he claimed he was being denied narcotic pain medication, and that various forms of medical treatment, including specific medication, testing, referrals and evaluations he believed necessary, were not being provided.

In the petition he filed in State court, plaintiff averred that he had initiated, but not fully exhausted, the prison's grievance procedures. He asked the State court to order the Corizon and MDOC defendants to provide him "with a medical examination, to include a full MRI scan of petitioner, until such time as the Department of Corrections grievance procedure has been fully exhausted by petitioner – which is already ensuing – which may take up to and past one year." He also asked the State court to "issue its order until such time as all prison-related grievances have been exhausted."

On July 8, 2019, the action was removed to this Court. Corizon, Graham and other named defendants filed motions seeking dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and plaintiff sought leave to file an amended complaint. On August 22, 2019, the Court entered an order granting plaintiff leave to file an amended complaint. Therein, the Court gave plaintiff clear instructions about how to prepare the amended complaint. The Court instructed plaintiff that Rule 8 of the Federal Rules of Civil Procedure required him to set forth a short and plain statement of the facts supporting his claims, and that his statement of facts must be simple, concise and direct. The Court emphasized that it was important for plaintiff to allege facts explaining how each defendant was personally involved in or directly responsible for harming him. In so doing, the Court explicitly cautioned plaintiff that it was insufficient to simply refer to a group of defendants and make general allegations against them, and that plaintiff must instead explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. The Court emphasized that plaintiff's statement of claim required more than mere labels and conclusions, or a formulaic recitation of the elements of a cause of action. The Court cautioned plaintiff that his failure to file an amended complaint in accordance with the Court's instructions would result in the dismissal of his case, without prejudice and

without further notice. Plaintiff filed the amended complaint on October 8, 2019, and Corizon and Graham filed the instant motion on October 23, 2019.

Plaintiff filed the amended complaint against Jason Lewis (the Warden of SECC), Anne Precythe (the Director of the MDOC), the MDOC, Corizon, Pharmacorr, Dr. Thomas Bredeman, Dr. Jerry Lovelace, Nurse Molly Leija, Nurse Practitioner Rebekah Graham, Nurse Larry Graham, Paula Reed (Assistant Warden at SECC), Nian Hill, John Doe, and Jane Doe.[1] Plaintiff prepared the amended complaint in two parts. The first is a partially-completed "Prisoner Civil Rights Complaint Under 42 U.S.C. § 1983" form. Plaintiff does not set forth any claims for relief or factual allegations on the form. Instead, he either writes "N/A" or references an attached document titled "First Amended Complaint." The Court will consider both documents as comprising plaintiff's amended complaint.

Plaintiff did not follow the Court's prior directives in preparing the amended complaint. It is needlessly long, it contains unnecessary information and legal argument, and the sentences are often long and confused. Plaintiff sets forth his claims for relief in conclusory fashion, and mostly lists the names of multiple defendants and sets forth generalized allegations against them. His actual claims are therefore somewhat difficult to discern. However, it is clear that he again claims that the defendants were deliberately indifferent to his serious medical needs, in violation of his rights guaranteed by the United States Constitution.

The amended complaint contains four counts. Facts common to all counts are as follows. On or about February 11, 2015, plaintiff was diagnosed with masses in his nasal cavity and nasopharynx, a brain tumor, and cancer. He experienced symptoms including memory disturbance,

---

[1] Plaintiff alleges that the Doe defendants are employees of Pharmacorr who were the "ultimate chronic medication provider and shipper to all Missouri Department of Corrections' Corizon Health Inc medical facilities."

headaches, seizures, swelling, swollen lymph nodes, and pain. He underwent radiation and chemotherapy treatment at St. Mary's Hospital in Jefferson City from approximately February 20, 2015 through April 10, 2015. On or about July 1, 2015 he suffered loss of mobility in his legs, and required a wheelchair.

Plaintiff claims that, following the radiation and chemotherapy treatment, he was denied constitutionally-adequate medical care. In support, he claims he was wrongfully denied narcotic pain medication, that certain medication was not prescribed, and that testing, referrals, evaluations, and assistive devices he believed were necessary were not provided. He also claims that Graham's determination to remove assistive devices amounts to a violation of his rights under the Americans With Disabilities Act ("ADA").[2] Attached to the amended complaint are copies of grievance materials plaintiff filed. The materials show that plaintiff filed grievances, appealed the denials of those grievances in July of 2019, and received responses in August of 2019, approximately four months after he initiated this action.

In the instant motion, defendants seek to dismiss plaintiff's claims against them because plaintiff failed to exhaust the prison grievance process before initiating this action. In response, plaintiff argues, for the first time, that he should be deemed to have exhausted administrative remedies because he did not receive responses to his initial Informal Resolution Requests ("IRRs") within the time required by MDOC policy, and because his March 18, 2019 and March 25, 2019 IRRs were not treated as emergencies, as he requested. Plaintiff also argues that he should be deemed to have exhausted administrative remedies because he completed the grievance process before this action was removed to this Court. In reply, defendants contend that plaintiff is

---

[2] Plaintiff does not specify the Title under which he seeks ADA relief. However, because Titles I and III are inapplicable to plaintiff's situation, the Court presumes he seeks relief under Title II, which prohibits a public entity from excluding disabled people from, or denying them the benefits of, programs, activities or services, and from otherwise discriminating against them.

5

impermissibly attempting to amend his complaint, and that even if plaintiff's new facts are considered, they are still entitled to dismissal for failure to exhaust administrative remedies.

**Discussion**

The Court views plaintiff's statements regarding the lack of timely responses to his IRRs and the denial of emergency status not as attempts to amend the amended complaint, but as arguments in response to the instant motion. Having considered the instant motion and plaintiff's arguments in response, the Court determines that the motion should be granted, and that this action should be dismissed because plaintiff failed to exhaust administrative remedies before initiating this lawsuit.

According to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (holding that exhaustion is mandatory). An inmate satisfies § 1997(e) when he "pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Burns v. Eaton,* 752 F.3d 1136, 1141 (8th Cir. 2014) (quoting *Hammett v. Cofield,* 681 F.3d 945, 947 (8th Cir. 2012)).

As the Eighth Circuit Court of Appeals has recognized, there are three steps to the MDOC grievance process:

> First, an inmate files an Informal Resolution Request (IRR). If dissatisfied with the response to the IRR, the inmate files a formal grievance. **MDOC Department Manual**, D5–3.2 Offender Grievance, III.L.1 (2009). If dissatisfied with the response to the grievance, the inmate appeals within seven days, or the appeal is "considered abandoned." *Id.* at III.M.1. "After receiving the appeal response, the offender has exhausted the grievance process." *Id.* at III.M.12. "Expiration of the response time limit at any stage of the process shall allow the grievant to move to the next stage of the process." *Id.* at III.K.9 (IRRs); III.L.18 (grievances).

> . . .
>
> According to the Manual, an IRR "should be responded to as soon as practical, but within 40 calendar days of receipt." *Id.* at III.K.6.e.

*Porter v. Sturm,* 781 F.3d 448, 450 (8th Cir. 2015). Exhaustion is not complete until the inmate receives a response to the grievance appeal. *Id.*

Inmates are excused from exhausting administrative remedies when prison officials prevent them from using the procedures, or when officials themselves fail to comply with the procedures. *Id.* (citing *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005)). However, a prison official's failure to timely respond to an inmate's IRR or grievance, even if unjustified, does not excuse the inmate's failure to exhaust if the lack of a timely response neither prevents the inmate from using grievance procedures, nor causes remedies to be unavailable. *See id.* at 452.

The Eighth Circuit has recognized that an inmate must exhaust administrative remedies *before* filing suit, and has instructed that district courts must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "If exhaustion was not completed at the time of filing, dismissal is mandatory." *Id.*

In the case at bar, plaintiff admittedly failed to exhaust administrative remedies with regard to the claims he seeks to bring before initiating this action in state court, and his arguments against dismissal on that basis are unavailing. Plaintiff does not explain, nor is it apparent, how the lack of a timely response to IRRs or the denial of emergency status prevented him from using the grievance procedure, or caused remedies to be unavailable. Under MDOC policy, the fact that an official failed to timely respond would not have prevented plaintiff from continuing using the grievance procedure, as expiration of the response time at one stage of the grievance process allows inmates to proceed to the next. Indeed, the documents plaintiff attached to the amended complaint

establish that he did just that, and continued using the grievance procedure until he received responses to his grievance appeals in August of 2019, thereby fully exhausting the grievance process. Therefore, administrative remedies were available and plaintiff used them to completion; he simply chose to initiate this action before doing so.

Plaintiff also argues that he satisfied the exhaustion requirement because he fully completed the grievance process before this case was removed to this Court. Plaintiff made the same assertion in the amended complaint, citing *Johnson v. Jones* for the proposition that an inmate properly exhausts his administrative remedies "where his grievance was filed after the initial complaint but before the amended complaint." These assertions are unavailing. As noted above, in *Johnson v. Jones,* the Eighth Circuit clearly held that inmates are required to exhaust administrative remedies before filing suit. 340 F.3d at 627. The fact plaintiff exhausted administrative remedies while this litigation was pending is not helpful to him. *See id.*

As an additional matter, the Court finds that plaintiff is not excused from exhausting administrative remedies because he initiated this action in State court. The PLRA's exhaustion requirement applies with equal measure to a prisoner's claims that are originally brought in state court and then removed to federal court. *See Jennings v. Dowling*, 642 F. App'x 908, 913 (10th Cir. 2016), *Marziale v. Silas*, 2015 WL 8431524 at * 2 (E.D. Ark. Nov. 10, 2015) (collecting cases), *report and recommendation adopted,* 2015 WL 8485240 (E.D. Ark. Dec. 8, 2015). Plaintiff's claims arise under 42 U.S.C. § 1983, and the forum in which he chose to initially bring them is immaterial. *See Felder v. Casey,* 487 U.S. 131, 148 (1988) ("The dominant characteristic of a § 1983 action, of course, does not vary depending upon whether it is litigated in state or federal court."). Had plaintiff not removed this case to this Court, the Missouri State court would have been required to enforce the exhaustion requirement. Accordingly, the Court concludes that

establish that he did just that, and continued using the grievance procedure until he received responses to his grievance appeals in August of 2019, thereby fully exhausting the grievance process. Therefore, administrative remedies were available and plaintiff used them to completion; he simply chose to initiate this action before doing so.

Plaintiff also argues that he satisfied the exhaustion requirement because he fully completed the grievance process before this case was removed to this Court. Plaintiff made the same assertion in the amended complaint, citing *Johnson v. Jones* for the proposition that an inmate properly exhausts his administrative remedies "where his grievance was filed after the initial complaint but before the amended complaint." These assertions are unavailing. As noted above, in *Johnson v. Jones,* the Eighth Circuit clearly held that inmates are required to exhaust administrative remedies before filing suit. 340 F.3d at 627. The fact plaintiff exhausted administrative remedies while this litigation was pending is not helpful to him. *See id.*

As an additional matter, the Court finds that plaintiff is not excused from exhausting administrative remedies because he initiated this action in State court. The PLRA's exhaustion requirement applies with equal measure to a prisoner's claims that are originally brought in state court and then removed to federal court. *See Jennings v. Dowling*, 642 F. App'x 908, 913 (10th Cir. 2016), *Marziale v. Silas*, 2015 WL 8431524 at * 2 (E.D. Ark. Nov. 10, 2015) (collecting cases), *report and recommendation adopted,* 2015 WL 8485240 (E.D. Ark. Dec. 8, 2015). Plaintiff's claims arise under 42 U.S.C. § 1983, and the forum in which he chose to initially bring them is immaterial. *See Felder v. Casey,* 487 U.S. 131, 148 (1988) ("The dominant characteristic of a § 1983 action, of course, does not vary depending upon whether it is litigated in state or federal court."). Had plaintiff not removed this case to this Court, the Missouri State court would have been required to enforce the exhaustion requirement. Accordingly, the Court concludes that

plaintiff failed to exhaust administrative remedies before initiating this action, and dismissal is therefore mandatory. *See Porter*, 534 U.S. at 524, *Johnson*, 340 F.3d at 627.

As an additional matter, the Court notes that plaintiff sets forth his claims against these defendants in a conclusory fashion, despite the Court's prior directive against doing so. The few facts he does plead fail to state a claim of constitutional dimension. Instead, they establish that plaintiff disagrees with Graham's treatment decisions, namely removing narcotic pain medication, not ordering certain testing or referring him to specialists, not prescribing certain medications, and ordering the removal of certain assistive devices. However, disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008). To the extent plaintiff can be understood to claim that Graham was negligent or committed malpractice, such allegations would not state claims of constitutional dimension. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding Corizon, plaintiff sets forth no non-conclusory allegations that a Corizon policy, custom, or official action caused an actionable injury. *See Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 690-91 (1978). Finally, neither Graham nor Corizon is a public entity that can be sued under Title II of the ADA, and plaintiff fails to allege facts permitting the inference that he is a qualified individual with a disability who was excluded from participation in or denied the benefits of the services, programs, or activities of the prison or was otherwise subjected to discrimination by reason of his disability. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (citation omitted) (noting that Title II provides redress only from public entities, and setting forth elements of an ADA claim).

For all of the foregoing reasons, the Court will grant the instant motion, and dismiss plaintiff's claims against Corizon and Graham.

Accordingly,

**IT IS HEREBY ORDERED** that Corizon and Rebekah Graham's Motion to Dismiss Plaintiff's Amended Complaint for Failure to Exhaust Administrative Remedies (ECF No. 22) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants Corizon and Rebekah Graham are **DISMISSED**. A separate order of partial dismissal will be entered herewith.

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 6th day of March, 2020.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE